Syllabus by the Court
Minnesota DR 2-105(B) prohibiting lawyer advertising of a legitimate specialization certification is unconstitutional.
Richard W. Johnson was admonished for advertising his certification as a Civil Trial Specialist by the National Board of Trial Advocacy (NBTA). Rule 2-105(B) of the Minnesota Code of Professional Responsibility prohibits a lawyer from holding himself or herself out as a specialist. Disciplinary Rule (DR) 2-105(B) is unconstitutional and the admonishment against Johnson is vacated.
Johnson has been a licensed lawyer of this state since 1952 and devotes most of his practice to civil trial advocacy. In *Page 283 
recent years the question of lawyer advertising and its regulation by the state bar has come to the forefront. InBates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691,53 L.Ed.2d 810 (1977) the United States Supreme Court found prohibitions on the advertising of legal services to be unconstitutional. The states were allowed to regulate advertising that is false, deceptive, or misleading. In response thereto this court amended DR 2-105 in 1980 to provide:
 A) A lawyer shall not use any false, fraudulent, misleading or deceptive statement, claim or designation in describing his or his firm's practice or in indicating its nature or limitations.
 B) A lawyer shall not hold out himself or his firm as a specialist unless and until the Minnesota Supreme Court adopts or authorizes rules or regulations permitting him to do so.
The question of rules regulating specialization were discussed by the Minnesota State Bar Association in 1981. No action was taken and no presentation has been made to this court regarding an appropriate rule regulating the advertising of specialization.
In 1979 the National Board of Trial Advocacy (NBTA) was formed. The NBTA is co-sponsored with the American Trial Lawyers Association, the International Academy of Trial Lawyers, the International Society of Barristers, the National Association of Criminal Defense Attorneys, the National Association of Women Lawyers, the American Board of Professional Liability Attorneys, and the National District Attorneys' Association. NBTA applies a rigorous and exacting set of standards and examinations on a national scale before certifying a lawyer as a trial specialist, either criminal or civil or both. Johnson applied for certification as a civil trial specialist and was successful. In the spring of 1983, after four years of existence, only 541 lawyers nationwide had been certified as trial specialists.
In 1982 Johnson placed an advertisement in a community directory and in the yellow pages of the telephone book which provided in part: "Johnson, Richard W. Civil Trial Specialist Certified by the National Board of Trial Advocacy Personal Injury Wrongful Death." In response to a complaint, the Board of Professional Responsibility issued charges of unprofessional conduct against Johnson. The director issued a private admonition. Johnson appealed the director's admonition to a panel of the board. After a hearing, the panel affirmed the director's admonition. The panel found Johnson's advertisement was in violation of the Disciplinary Rules of this court but it was not misleading or deceptive. The panel also stated: "Respondent (Johnson) does present a cogent argument to the effect that the rule (DR 2-105(B)) did not survive the Supreme Court's decision. (In re R.M.J., 455 U.S. 191 [102 S.Ct. 929,71 L.Ed.2d 64] (1982))." The panel, after expressing doubt in the constitutionality of DR 2-105(B), declared that it was not the proper authority to decide the constitutionality issue because "a decision by the Panel declaring the [rule] unconstitutional could not be publicized to the members of the Minnesota Bar." Johnson appealed the ruling of the panel to this court.
The issue presented is whether the current disciplinary rule of this court prohibiting the advertisement of a legal specialty survives recent decisions of the United States Supreme Court.
Following the landmark case of Bates v. State Bar of Arizona,433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), in which the United States Supreme Court found prohibitions on the advertising of legal fees unconstitutional, it refined its position in In Re R.M.J., 455 U.S. 191, 102 S.Ct. 929,71 L.Ed.2d 64 (1982). R.M.J. involved a Missouri attorney who advertised that he was admitted to practice before the United States Supreme Court and listed 23 areas of law in which he practiced. The attorney's listing of areas of practice deviated from the prescribed areas allowed by the bar in several respects. The attorney listed "personal injury" and "real estate" instead of "tort law" or "property law" and several other areas without analogue in the *Page 284 
list of areas allowed by the Missouri Bar. Those included "contract," "zoning and land use," "communication," and "pension and profit sharing plans." His statement that he was admitted to practice before the United States Supreme Court was also not allowed by local rules. The attorney also did not include in his advertising a disclaimer mandated by the bar. The advertisement must include a disclaimer of certification of expertise following the listing of specific areas of practice. Finally, it was charged that the attorney sent out general mailings of a dignified professional announcement to more than just "lawyers, clients, former clients, personal friends, and relatives." 455 U.S. at 196, 102 S.Ct. at 934.
The court in R.M.J. reiterated its statement in Bates that lawyer advertising was a form of commercial speech, protected by the First Amendment and that "advertising by attorneys may not be subjected to blanket suppression." 455 U.S. at 199,102 S.Ct. at 935. It stated that the court in Bates concluded price advertising for certain "routine" legal services was not inherently misleading. Id. Commenting further on the Bates decision the court in R.M.J. held:
 But the decision in Bates nevertheless was a narrow one. The Court emphasized that advertising by lawyers still could be regulated. False, deceptive, or misleading advertising remains subject to restraint, and the Court recognized that advertising by the professions poses special risks of deception — "[B]ecause the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising." Id. [433 U.S.] at 383 [97 S.Ct. at 2708] (footnote omitted). The Court suggested that claims as to quality or in-person solicitation might be so likely to mislead as to warrant restriction. And the Court noted that a warning or disclaimer might be appropriately required, even in the context of advertising as to price, in order to dissipate the possibility of consumer confusion or deception. "[T]he bar retains the power to correct omissions that have the effect of presenting an inaccurate picture, [although] the preferred remedy is more disclosure, rather than less." Id., at 375 [97 S.Ct. at 2704].
Id. 455 U.S. at 200-01, 102 S.Ct. at 936.
As stated above the court believes some narrowly drawn restrictions are allowable but the "preferred remedy is more disclosure, rather than less." Id. at 201, 102 S.Ct. at 936. The court then summarized the commercial speech doctrine:
 * * * Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive. Thus, the Court in Bates suggested that the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation. 433 U.S., at 375 [97 S.Ct. at 2704]. Although the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.
 Even when a communication is not misleading, the State retains some authority to regulate. But the State must assert a substantial interest and the interference with speech must be in proportion to the interest served. Central Hudson Gas Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 563-564 [100 S.Ct. 2343, 2350, 65 L.Ed.2d 341] (1980). Restrictions must be narrowly drawn, and the State lawfully may regulate only to the extent regulation furthers the *Page 285 
State's substantial interest. Thus, in Bates, the Court found that the potentially adverse effect of advertising on professionalism and the quality of legal services was not sufficiently related to a substantial state interest to justify so great an interference with speech. 433 U.S., at 368-372, 375-377 [97 S.Ct. at 2704-2705].
Id. 455 U.S. at 203-04, 102 S.Ct. at 937-38. States, therefore, retain authority to regulate advertising that is inherently misleading or that has proved to be misleading in practice. Id. at 207, 102 S.Ct. at 939-40.[1] The court reversed the Missouri Supreme Court's decision and found that the information in the advertisement was not misleading.
It is interesting to note that the court found that the attorney's reference to being admitted to practice before the United States Supreme Court could be misleading to the general public unfamiliar with the requirements of admission to the Bar of the United States Supreme Court. Id. at 205,102 S.Ct. at 938. The lack of guidelines for admission to practice before the United States Supreme Court is similar to the problem with specialization designation. Members of the general public could be misled by claims of specialization when no guidelines for specialization in the profession have been drawn. In the instant case, however, the panel found that the advertisement was not misleading or deceptive.
This court has also addressed the commercial speech doctrine with regard to attorney advertising in the case of Matter ofDiscipline of Appert, 315 N.W.2d 204 (Minn. 1981). Appert
involved the disciplinary rule on advertising which effectively prohibited attorneys from distributing letters and brochures advertising their availability to handle, on a contingent fee basis, complex litigation against intrauterine device manufacturers. This court held that the rule unconstitutionally restricted the attorney's and public's First Amendment right to free speech where the letters and brochures did not contain false, fraudulent, deceptive, or misleading information.315 N.W.2d at 211-12.
Applying R.M.J. and Appert to the facts of this case, it appears that DR 2-105(B) is too restrictive. The rule is designed to prevent misleading an uninformed public by claims of specialization and quality of services. That in and of itself is a meritorious goal. But the method used to achieve that goal is to impose a blanket prohibition on all commercial speech regarding specialization until the Minnesota Supreme Court promulgates rules describing what specialty designations will be accepted and how to get that designation. In view of the overbreadth of the rule, the lack of presentation to this court of proposed rules, and the finding of the panel that this advertisement was not misleading or deceptive, there is no basis for upholding the rule in this case.
DR 2-105(B) is hereby declared unconstitutional on its face and as applied and the admonition issued by the director of the Board of Professional Responsibility against Richard W. Johnson is hereby vacated.
[1] Under DR 2-105(A) discipline could be imposed if the particular certification advertised was perfunctorily granted by an organization with few or no standards and there was a finding that the advertising was false, fraudulent, misleading or deceptive.